**PEASPANEN et al., Appellants,**

**v.**

**BOARD OF EDUCATION OF ASHTABULA AREA
CITY SCHOOL DISTRICT et al., Appellees.**

[Cite as *Peaspanen v. Ashtabula Area City School Dist.
Bd. of Edn.* (1995), 107 Ohio App.3d 622.]

Court of Appeals of Ohio,
Eleventh District, Ashtabula County.

No. 95–A–0021.

Decided Dec. 4, 1995.

*Joshua J. Kancelbaum,* for appellants.

*John T. DeFazio* and *Mark W. Andrews,* for appellees.

JOSEPH E. MAHONEY, Judge.

This is an accelerated calendar case submitted to this court on the briefs of the parties.

A complaint was filed in Ashtabula County Common Pleas Court on November 25, 1991 on behalf of appellants, Judi Peaspanen and John Peaspanen, against appellees, Board of Education of the Ashtabula Area City School District ("board"), its superintendent, Elinor Scricca, and its assistant superintendent, John Rose. The claim on behalf of Judi Peaspanen asserted a workplace intentional tort. Her husband's claim was for loss of consortium.

On June 13, 1992, appellees filed a motion for summary judgment. On March 17, 1995, the trial court granted summary judgment in favor of appellees. From that decision, appellants timely filed a notice of appeal.

The facts in this case are essentially undisputed by the parties. Appellant, Judi Peaspanen, began working as the librarian for Ashtabula High School in 1985. In 1990, the board decided to remodel the library area of the high school to include an interactive television facility. As part of the remodeling project, changes were made to that part of the library occupied by Judi Peaspanen's office.

In November 1990, shelves were installed on three of the four walls in Judi Peaspanen's office. Her office was to serve the additional purpose of being the

storage room for periodicals. Additionally, all windows to the outside were sealed or eliminated from the office. There had previously been one vent in the office but it had been sealed at the direction of the board and it was also blocked by the new shelving that was installed.

The new shelves were coated with a urethane floor coating known as "Gold Medalist Wood Gym Finish." During the application of this coating, Judi Peaspanen objected to the work being performed during school hours, so this part of the work was performed after school hours.

Within a few days of the urethane finish being applied to the shelves, Judi Peaspanen developed upper respiratory problems including an irritated nose and throat, and breathing difficulties.

On January 10, 1991, Judi Peaspanen wrote a letter to the high school principal describing her medical problems and asking that an air conditioner and air filtration system be installed in her office and that the carpeting be steam cleaned. Subsequently, she delivered a letter to the board written by her regular physician, which indicated that her upper respiratory problems were probably related to her working conditions and that improved ventilation in her office would benefit her condition.

Additionally, Judi Peaspanen sought treatment from an ear, nose and throat specialist. He gave her a letter on February 21, 1991, which was also forwarded to the board, wherein he diagnosed her condition as "sick building syndrome" and expressed his opinion that her problems were being caused by the lack of ventilation, the carpeted floor, and the varnished shelves.

In response to her complaints, the board hired a consulting firm to test the air quality in Peaspanen's work area of the library. The firm concluded that the dust level was slightly above recommended standards for nonindustrial atmospheres. The board responded by installing ventilation ducts and an air vent in the door which separated Peaspanen's office from the main portion of the library. It also installed an air cleaner in her work area.

Peaspanen's condition did not improve, so on April 18, 1991, she contacted the Division of Safety and Hygiene of the Ohio Bureau of Workers' Compensation to conduct tests in her work area. The industrial hygienist performed tests in the area and concluded in his report:

"In summary, no definitive conclusions could be reached regarding the causation of the symptoms described. However, the lack of fresh outdoor air in parts of the building is documented. Since the breathing difficulties began soon after the remodeling of the library work room, the two events may be related. The removal of the shelving and wall may alleviate the breathing difficulties if adhesives or other building materials were the cause. Additional fresh outdoor

air reduces or eliminates indoor air quality problems in many cases when the exact cause is unknown."

On July 9, 1991, Peaspanen commenced treatment by an environmental medicine specialist. After no improvement in her condition, on August 27, 1991, she formally requested a transfer to another school within the district. Her request was denied by the board.

On September 13, 1991, Peaspanen's specialist gave her a letter, which she promptly delivered to the board, wherein he provided a diagnosis of chemical sensitivity. He concluded:

"It is my medical opinion that this illness was induced by the extended exposure to the construction and painting materials in her work place. It has caused extreme chemical sensitivities documented by the described test results and this degree of sensitivity is extreme. She has a poor prognosis for recovery and therefore, will have to take the above special precautions most likely for her lifetime."

In September 1991, the board commenced preparation to install a ventilation fan in the library. Peaspanen learned that the fan was to be insulated with a material called Tuff–R Celotex which contains isocyanurate, a substance to which she had tested sensitive. She brought that fact to the attention of the maintenance supervisor and urged him not to use it. Her plea was ignored and the ventilation fan was installed as planned. On the day after installation, Peaspanen suffered a severe reaction. She went on medical leave on the following day, September 27, 1991.

In support of her motion opposing summary judgment, Judi Peaspanen introduced evidence that both the label on the can of Gold Medalist Wood Gym Finish and the Material Data Safety Sheet provided by the manufacturer of the product pursuant to the Federal Occupational Safety and Health Standards Hazard Communication Rule, and furnished to the Board by the manufacturer, indicated that the product was to be used in well-ventilated areas only. The Material Data Safety Sheet contained the following health warning:

"Chronic overexposure leads to central nervous system depression and permanent brain and nervous system damage."

Further, the sheet specifically warned that overexposure could lead to upper respiratory irritation.

Appellants have set forth a single assignment of error. Appellants contend that the trial court erred in granting appellees' motion for summary judgment.

Civ.R. 56(C) provides, in relevant part:

"Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

The Supreme Court of Ohio has stated that the moving party bears the burden of establishing that (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds, construing the evidence in favor of the nonmoving party, can come to but one conclusion and that conclusion is adverse to the party opposing the motion. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47; *Morris v. Ohio Cas. Ins. Co.* (1988), 35 Ohio St.3d 45, 46–47, 517 N.E.2d 904, 906. "A motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial." *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095, 1099 (citing *Celotex Corp. v. Catrett* [1986], 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265).

In *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, the Supreme Court of Ohio set forth the following three-part test to determine whether an intentional tort occurred:

"(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." *Id.* at paragraph one of the syllabus; followed in *Bond v. Howard Corp.* (1995), 72 Ohio St.3d 332, 650 N.E.2d 416.

Additionally, the court discussed the term "intent," at paragraph two of the syllabus:

"To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may

follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fáct desired to produce the result. However, the mere knowledge and appreciation of a risk—something short of substantial certainty— is not intent. (*Van Fossen v. Babcock & Wilcox Co.* [1988], 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph six of the syllabus, modified as set forth above and explained.)"

In the case *sub judice*, appellants presented evidence that appellees knew or should have known prior to remodeling Judi Peaspanen's office that the urethane floor coating used to coat the new shelves in her office emitted potentially dangerous fumes and that it should be applied in a well-ventilated area. It is clear that Peaspanen's office was not a well-ventilated area.

Peaspanen sought treatment from three different doctors in an attempt to find a cure for her medical condition and all three doctors concluded that the cause of her condition was her workplace. Peaspanen relayed this information to the board in a timely manner. She made suggestions on how to improve her working conditions and alleviate her symptoms and she even attempted to transfer to a different school within the system. It is clear that she made every effort to inform her employer of her medical problems, the cause thereof, and the possible solutions to ending her medical problems.

In response, appellees made an initial attempt at improving the ventilation in Peaspanen's office, and then made a subsequent attempt by installing a ventilation fan. However, the ventilation fan served only to aggravate Peaspanen's condition because of the type of insulation used in the system, which Peaspanen had warned the board about. It is clear, however, that the board chose to ignore the warnings regarding use of Gold Medalist Wood Gym Finish, as well as Peaspanen's request for the installation of an air conditioner, her request for a transfer, and her request not to use the type of insulation that was eventually used in conjunction with the ventilator fan.

Under such circumstances, when the evidence presented is construed most strongly in favor of appellants, this court cannot conclude that reasonable minds could come to but one conclusion, that conclusion being that appellees did not commit an intentional tort. There was sufficient evidence presented to create a question of fact regarding the intent of appellees and the matter should have been submitted to the trier of fact. Accordingly, the trial court erred in granting summary judgment in favor of appellees.

Appellants' sole assignment of error is sustained.

The judgment of the trial court is reversed and the matter remanded for further proceedings in accordance with the law and not inconsistent with this opinion. Costs assessed to appellees.

*Judgment reversed*
*and cause remanded.*

FORD, P.J., and NADER, J., concur.