**The STATE ex rel. PEASPANEN, Appellant,**

v.

**OHIO STATE TEACHERS RETIREMENT BOARD, Appellee.**

[Cite as *State ex rel. Peaspanen v. Ohio State Teachers
Retirement Bd.* (2001), 143 Ohio App.3d 164.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 00AP–1126.

Decided May 8, 2001.

---

15. See *Williams v. Aetna Fin. Co.* (1998), 83 Ohio St.3d 464, 700 N.E.2d 859.

Manos, Martin, Pergram & Dietz Co., L.P.A., and *James M. Dietz*, for appellant.

*Porter, Wright, Morris & Arthur, L.L.P., Craig R. Carlson* and *David S. Bloomfield, Jr.*, for appellee.

LAZARUS, Judge.

Plaintiff-appellant, Judi Peaspanen, appeals from the August 18, 2000 decision and September 6, 2000 entry granting the motion of defendant-appellee, Ohio State Teachers Retirement Board ("STRB"), for summary judgment, denying appellant's motion for summary judgment, and dismissing appellant's complaint. For the reasons that follow, we affirm the judgment of the trial court.

Appellant, a librarian for Ashtabula High School, filed her application for disability retirement on October 29, 1991, alleging chemical sensitivity due to exposure to a urethane floor coating known as "Gold Medalist Wood Gym Finish." The floor coating was applied to shelves installed in appellant's office in November 1990. See *Peaspanen v. Ashtabula Area School Dist. Bd. of Edn.*

(1995), 107 Ohio App.3d 622, 669 N.E.2d 284 (detailed statement of underlying facts).

STRB appointed Dr. Herbert Bronstein to conduct a medical examination of appellant. On February 24, 1992, Bronstein issued his recommendation as to whether appellant should receive disability retirement benefits. In the space on the form that provided "I hereby certify that in my opinion the applicant (is or is not) incapacitated for the performance of duty as a teacher," Dr. Bronstein typed in "is questionably." In the space that provided that "the disability (is or is not) considered to be permanent," Dr. Bronstein typed in "questionably," and in the space that provided "and that he/she (should or should not) be retired," Bronstein typed in "questionably." Dr. Bronstein further noted that "I suggested doing allergy skin tests but she refused." Dr. Bronstein also noted that "[o]n the basis of her history and physical, I was unable to substantiate any objective abnormalities. This woman has a multitude of complaints and is convinced that she has 'sick building syndrome.' This has been reinforced on her by an allergist and a clinical ecologist. The literature is replete with findings to refute this type of testing for chemicals." Finally, Dr. Bronstein noted that "[p]erhaps this patient should have psychiatric evaluation to rule out any functional disease."

Following Dr. Bronstein's report, a panel of the Board of Medical Review ("BMR"), consisting of Dr. Ernest Mazzaferri, Dr. Charles Wooley, and Dr. George Lohrman, reviewed the documents related to appellant's case. In a report dated June 4, 1992, Dr. Mazzaferri recommended that disability not be granted, noting that appellant had refused the request to be seen by a psychiatrist. In a report dated June 18, 1992, Dr. Wooley found no basis for permanent disability "at this time" and recommended that appellant not be retired. He went on to state, however, that "[g]iven the nature of this particular disability retirement case, it would be advisable that we discuss this at the next meeting of the Medical Review Board." In a report dated June 25, 1992, Dr. Lohrman stated:

"I do not think that we have objective evidence for a medical illness. Her refusal to complete recommended examinations is no doubt her right, but does not give us the information to form a reasonable and fair opinion. Based on what I have reviewed, I cannot say she is or is not permanently disabled, but based on the information we have, I do not recommend granting permanent disability retirement."

On June 29, 1992, the BMR panel recommended that disability retirement be denied.

On August 13, 1992, the BMR panel met in a special conference to again discuss appellant's application. After considerable discussion, the panel unanimously agreed that appellant was not permanently disabled.

Appellant's attorney requested, and was granted, the opportunity to submit additional evidence. Based on the new evidence, Dr. Bronstein submitted a new recommendation to the BMR dated October 26, 1992, stating that appellant "is incapacitated for the performance of duty as a teacher, that the disability is considered to be permanent, or presumed to be permanent (12 continuous months), and that he or she should be retired." This certification by Dr. Bronstein was submitted to the BMR panel for their review and recommendation.

On November 8, 1992, Dr. Mazzaferri wrote:

"After review of these medical documents, I believe the claimant's condition is permanently incapacitating for the performance of her job, and accordingly recommend that retirement disability be granted."

On November 12, 1992, Dr. Wooley wrote:

"Upon review of the entire disability retirement case, and of Dr. Bronstein's Medical Examiner's Report, I concur with the opinion expressed by Dr. Bronstein that Judi Peaspanen is incapacitated for the performance of her duties as a teacher, and it is my recommendation that she should be retired. It would be appropriate to obtain a reevaluation in 1 year."

On December 1, 1992, Dr. Lohrman wrote:

"I have reread all of the reports, including the recent ones, and a letter from Dr. Herbert Bronstein, who now concludes, 'She appears to be incapacitated to perform her duties as a teacher.' Previously she had refused skin testing by Dr. Bronstein when he examined her on February 18, 1992. She also previously refused independent examinations by a psychiatrist and an internist, insisting upon exams by physicians who are members of the American Academy of Environmental Medicine, and she provided a list.

"Tremendous progress has been made in the past decade in immunology. It has become very sophisticated. At the same time, some of the work is controversial. I think Ms. Peaspanen is probably disabled. I am, however, uncertain whether it is because of chemical sensitivities. I would prefer the opinion of an independent allergist/immunologist certified under the aegis of the American Board of Allergy and Immunology.

"I will conclude at this point that she is disabled. However, I would like this to be reviewed at our next special conference."

The BMR met on December 17, 1992, to discuss appellant's case and came to the unanimous conclusion that a proper decision could not be made until appellant underwent further evaluation. Appellant, however, refused to be tested by an allergist, apparently believing that undergoing further testing would exacerbate her condition. The panel met again in special conference on March 30, 1993, and

concluded that there was insufficient evidence to make a determination as to whether appellant was disabled.

Dr. Robert J. Atwell, then-chair of the BMR, sent a letter dated April 5, 1993 to STRB stating that there was insufficient medical information to make a recommendation since appellant refused to undergo skin testing by an appointed examiner. He stated that "[b]ecause of the lack of information and cooperation, I feel that the application should be canceled [*sic*]/denied. To do otherwise would set a bad precedent for further applicants."

On May 28, 1993, appellant agreed to see an allergist. On August 13, 1993, Dr. Howard Schwartz issued a report indicating his belief that appellant was not entitled to disability retirement.

On September 10, 1993, the Disability Review Committee met and sustained the recommendation of the BMR to deny appellant's application. On October 22, 1993, the STRB did not approve the application. Appellant appealed the action and requested an adjudication hearing.

On January 21, 1994, the STRB conducted the adjudication hearing. In response to appellant's presentation at that hearing, STRB requested further evaluation including a psychiatric evaluation, and additional allergy testing.

Appellant underwent further evaluation. On August 2, 1994, Dr. Jeffrey Hutzler concluded that appellant was not incapacitated in her ability to teach from a psychiatric standpoint and that she did not show signs of any particular psychopathology during the interview. On August 9, 1994, Dr. Schwartz again concluded that appellant was not disabled.

On October 21, 1994, the STRB resumed deliberation of the hearing that it had left open, received the additional evidence, and affirmed its previous position that benefits be denied.

On October 21, 1999, appellant filed a declaratory judgment action and mandamus action in the court of common pleas. STRB moved for summary judgment, arguing that it did not violate a clear legal duty and did not abuse its discretion in denying appellant's application for disability retirement benefits. The trial court granted STRB's motion for summary judgment, finding that reasonable minds could only conclude that STRB fully investigated appellant's case, provided her with "robust" due process, and that it did not abuse its discretion in handling and deciding her claim.

Appellant has appealed the decision of the trial court, assigning as error the following:

"1. The trial court erred when it held that Appellant was not entitled to a writ of mandamus ordering Appellee to grant her disability retirement pursuant to Ohio Rev.Code § 3307.42

"2. The trial court erred when it held that Appellee did not abuse its discretion in failing to award Appellant disability retirement."

The essence of appellant's argument is this: STRB abused its discretion by refusing to award disability retirement after Dr. Bronstein, STRB's own independent medical specialist, certified that appellant qualified for disability and the BMR recommended that appellant receive disability retirement. Appellant argues that, as of December 1992, STRB's appointed medical expert, Dr. Bronstein, and its medical review board all agreed that appellant should be granted disability retirement. Appellant contends that there was no fair or substantial cause or reason for denying the application at that time. Instead, STRB required additional medical consultations until, appellant contends, STRB found doctors who would recommend against granting the application for disability retirement.

R.C. 3307.62, formerly R.C. 3307.42, sets forth the procedures for the processing and determination of applications for disability retirement. That statute provides:

"(C) Medical examination of the member shall be conducted by a competent, disinterested physician or physicians selected by the board to determine whether the member is mentally or physically incapacitated for the performance of duty by a disabling condition, either permanent or presumed to be permanent for twelve continuous months following the filing of an application. The disability must have occurred since last becoming a member, or it must have increased since last becoming a member to such an extent as to make the disability permanent or presumably permanent for twelve continuous months following the filing of an application.

"* * *

"(E) If the physician or physicians determine that the member qualifies for a disability benefit, the board concurs with the determination, and the member agrees to medical treatment as specified in division (G) of this section, the member shall receive a disability benefit under section 3307.63 or 3307.631 of the Revised Code. If such physician or physicians determine that the member does not qualify for a disability benefit, the report of the examiner or examiners shall be evaluated by a board of medical review composed of three physicians appointed by the retirement board.

"(F) The state teachers retirement board shall render an order determining whether or not the applicant shall be granted a disability benefit. Notification to

the applicant shall be issued, and upon the request of an applicant who is denied a disability benefit, a hearing or appeal relative to such order shall be conducted in accordance with procedures established by the retirement board."

In this case, appellant has misread the reports and recommendations of the various physicians. Even those physicians certifying appellant as disabled expressed equivocation or residual concerns over appellant's case. It was the statutory duty of STRB to weigh the medical evidence and make the ultimate determination as to whether appellant was entitled to disability retirement. See *Fair v. School Emp. Retirement Sys.* (1978), 53 Ohio St.2d 118, 7 O.O.3d 192, 372 N.E.2d 814 (interpreting analogous statute). Given the apparent controversy in the medical community (as reflected in the record) concerning appellant's medical condition, it was well within the discretion of STRB to appoint additional examining physicians whose views on multiple chemical sensitivity might differ from the views of appellant's treating physicians. Much of the concern on the part of STRB as reflected in the record relates to appellant's desire not to be examined by an appointed examiner, but, rather, for STRB to make its determination on the basis of opinions rendered by her treating physicians. In *Schwaben v. School Emp. Retirement Sys.* (Nov. 21, 1995), Franklin App. No. 95APD01-110, unreported, 1995 WL 694491, at *3, affirmed (1996), 76 Ohio St.3d 280, 667 N.E.2d 398, this court, in interpreting the analogous provisions providing for disability coverage for the School Employees Retirement System ("SERS"), stated:

"* * * SERS is charged with making an independent decision regarding which disease or physical impairments constitute disabilities and, thus, is not obligated to rely on medical evidence submitted by the SERS member in making its decision."

Based on our review of the record, we find no abuse of discretion on the part of STRB in denying the application. Accordingly, appellant's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

TYACK and BROWN, JJ., concur.