DECISION
{¶ 1} Relator, Edward Joseph Ackerman ("relator"), filed this action seeking a writ of mandamus ordering respondent, State Teachers Retirement Board of Ohio ("respondent"), to vacate its decision terminating his disability retirement benefits and to enter an order continuing those benefits. *Page 2 
 {¶ 2} We referred this matter to a magistrate pursuant to Rule 12(M) of this court and Civ.R. 53. The magistrate issued a decision dated March 22, 2007 (attached as Appendix A), concluding that the requested writ should be denied. Relator filed objections to the magistrate's decision, and respondent filed a memorandum in response.
 {¶ 3} Initially, relator objects to the magistrate's findings of fact regarding the timing of respondent's referral of relator to Dr. Katz for an additional medical examination. The magistrate's decision stated that this referral occurred prior to respondent's decision to terminate relator's disability benefits. However, the record shows that relator was notified by letter dated May 23, 2006 that his benefits would be terminated effective August 31, 2006. The referral to Dr. Katz was dated August 16, 2006. Thus, although the magistrate was correct in that the referral was made prior to the actual termination of relator's disability compensation, the referral was made after respondent had decided to terminate those benefits. Thus, although not determinative of the case before us, we modify the magistrate's decision to reflect those facts.
 {¶ 4} In his objections to the magistrate's conclusions of law, relator essentially argues that respondent erred when it failed to accept the conclusion made by Dr. Harvey Lester, who conducted the independent medical examination as part of the review of relator's disability determination, that relator continued to be incapacitated from the performance of his teaching duties. Relator further argues that respondent has manipulated the medical evidence to support its determination that relator's disability compensation should be terminated.
 {¶ 5} Dr. Lester's report did conclude that relator should continue to receive disability compensation. However, the report states that this conclusion was based on Dr. *Page 3 
Lester's opinion that, "It is simply not reasonable to expect Mr. Ackerman to return to his original teaching duties after some seventeen years of total disability." Thus, the conclusion appears to have been based not on the medical factors present, but instead on the passage of time since the initial disability determination. Given this uncertainty, respondent was well within its discretion to have relator's case reviewed by its medical review board to consider whether the medical evidence established that relator continued to be incapacitated from the performance of his teaching duties.
 {¶ 6} Following an independent review of the record in this case, we find that the magistrate has properly determined the facts, except as noted above regarding the timing of the referral to Dr. Katz in relation to the timing of respondent's decision to terminate relator's disability benefits, and applied the appropriate law. Therefore, we adopt the magistrate's decision as modified. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled; writ of mandamus denied.
 BRYANT and KLATT, JJ., concur. *Page 4 APPENDIX A MAGISTRATE'S DECISION Rendered on March 22, 2007 IN MANDAMUS {¶ 7} Relator, Edward Joseph Ackerman, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, State Teachers Retirement Board of Ohio ("STRB"), to vacate its decision terminating his disability *Page 5 
retirement benefits and ordering respondent to enter a decision continuing his disability retirement benefits.
Findings of Fact: {¶ 8} 1. In March 1989, relator, who is a member of the State Teachers Retirement System of Ohio ("STRS"), filed with STRS a disability retirement application. Relator had been employed as a special education teacher with Warren City Schools.
 {¶ 9} 2. STRS's application form asks the applicant to describe the nature of his/her physical/medical disability that incapacitates their performance of duty as a teacher. In response to the query, relator wrote:
 An infection of the inner eyelids that causes a film over the eyes making it impossible to focus on reading material. Prolonged attempts to focus the eyes results in severe headaches. Antibiotics have totally lost their ability to control this condition. During the 1987-88 school year I took a one year leave without pay in order to correct this condition but treatment to date has been ineffective.
 {¶ 10} 3. On March 29, 1989, relator's treating physician Robert T. Brodell, M.D., certified that relator was incapacitated from the performance of his duties as a teacher and that disability may be considered permanent. Dr. Brodell noted further that a full evaluation concerning the permanence of the disability would be completed within one month. Thereafter, Dr. Brodell completed a "Report Of Attending Physician" and diagnosed relator with the following: "Staph aureus blepharitis and carrier state with resistence [sic] to multiple antibiotics." Dr. Brodell indicated that relator appeared resistant to antibiotics and that his prognosis was poor. Dr. Brodell further indicated that relator would either recover within four months or the disability could be considered permanent. *Page 6 
 {¶ 11} 4. Thereafter, relator was examined by several different doctors. Each of those doctors concurred that relator suffered from chronic blepharitis; however, none of those doctors opined that relator was permanently incapacitated from the performance of his job, and each of them recommended various courses of treatment, including minor surgery in order to alleviate relator's problem.
 {¶ 12} 5. At first, the members of the STRS medical review board recommended that relator's application should be denied, relying primarily upon the report of Phyllis Visocan, M.D.
 {¶ 13} 6. Relator submitted additional medical evidence in support of his application for disability retirement. Dr. Visocan reviewed that additional evidence and continued to opine that relator was not incapacitated from the performance of his duty as a teacher.
 {¶ 14} 7. Relator was examined by Susan C. Benes, M.D., on August 23, 1989. Dr. Benes opined that relator was incapacitated from the performance of his duty as a teacher, that the disability was presumed to be permanent, but indicated further that she was not sure whether or not he should be retired. It was the opinion of Dr. Benes that relator had not yet received reasonably adequate treatment in an effort to correct the cause of his disability. Similar opinions were provided by Richard Lembach, M.D., and Jeffery C. Hutzler, M.D.
 {¶ 15} 8. The doctors of the medical review board reviewed the evidence in the file and concluded that relator was not entitled to disability retirement at that time.
 {¶ 16} 9. Relator, through counsel, submitted a memorandum to STRS regarding his disability. Specifically, counsel pointed out that it was inappropriate for the *Page 7 
medical review board to recommend that relator's application for disability retirement be reconsidered following six months of therapy when the therapy recommended by all three doctors constituted a surgical procedure to relator's eyelids. Counsel pointed out that, while Ohio Adm. Code 3307-1-15(C) does provide that disability retirement can be delayed in order for the applicant to obtain appropriate medical treatment, subparagraph (3) specifically provides that the medical treatment required shall not include surgery.
 {¶ 17} 10. As such, by letter dated March 23, 1990, relator was notified that his application for disability retirement had been approved.
 {¶ 18} 11. Thereafter, by letter dated May 16, 2005, STRS notified relator that, in accordance with R.C. 3307.64, STRS had reviewed his medical file and requested an update on his current medical condition. Further, relator was informed that, following a review of the additional medical evidence he submitted, STRS may require that he be reexamined by an independent medical examiner.
 {¶ 19} 12. Relator was scheduled for an appointment with Harvey Lester, M.D., on October 28, 2005. In a report dated January 21, 2006, Dr. Lester stated, in pertinent part:
 * * * I hereby certify that because of the disability as reported, the above-named disability beneficiary is not capable of resuming regular full-time service similar to that from which he or she retired and that disability benefits should be continued.
 * * *
 Certainly on the basis of this examination I would not consider Mr. Ackerman to be totally and permanently disabled. I am in no position to question the wisdom of the board in finding for the original disability some seventeen years ago. It is simply not reasonable to expect Mr. *Page 8 Ackerman to return to his original teaching duties after some seventeen years of total disability. I feel his disability compensation should be continued. * * *
(Emphasis added.)
 {¶ 20} 13. Thereafter, Edwin H. Season, M.D., a member of the medical review board, reviewed relator's file. Dr. Season reiterated that, in spite of the fact that various doctors had opined that relator was not incapacitated from performing his former job, retirement benefits were granted to relator. Dr. Season then concluded:
 Mr. Ackerman underwent recent ophthalmologic evaluation by Doctor Lester in October 2005. Doctor Lester diagnosed no significant ophthalmologic condition and felt Mr. Ackerman was not totally and permanently disabled.
 On the basis of this recent report and the previous medical information I recommended against disability retirement.
 {¶ 21} 14. Barry Friedman, M.D., also reviewed relator's file and concluded as follows:
 Mr. Ackerman has longstanding chronic blepharitis symptroms [sic]. He has had extensive treatment in 1989-1990. At one time it was felt that "floppy lids" attributed to his symptoms with a recommendation that surgery be considered however this was not carried out. In more recent years Mr. Ackerman's blepharitis has been treated solely with conservative measures of lid scrubs and topical antibiotic usage on an as needed basis.
 When Mr. Ackerman was recently evaluated by Dr. Lester he described that his eyes were dry and irritated. Dr. Lester's exam showed that the eyes were "minimally inflamed although somewhat dry". Mr. Ackerman's vision was felt to be 20/50 in the right eye in the 20/40-in the left eye.
 While Dr. Lester stated in his report "on the basis of this examination I would not consider Mr. Ackerman to be totally and permanently disabled", he did feel that it was "not *Page 9 
reasonable to expect Mr. Ackerman to return to his original teaching duties."
 In my opinion Mr. Ackerman is not disabled for the performance of his previous duties.
 {¶ 22} 15. Charles F. Wooley, M.D., also reviewed relator's file and, relying upon the report of Dr. Lester, concluded that relator was not permanently incapacitated and was capable of returning to contributing service.
 {¶ 23} 16. Thereafter, Earl N. Metz, M.D., informed STRS of the following:
 The medical file of the above named member has been studied by the following Medical Review Board members, Dr. Edwin Season, Dr. Barry Friedman, and Dr. Charles Wooley. The Medical Review Board concurs with the opinion of the appointed examiner and recommends that disability benefits be terminated.
 {¶ 24} 17. Relator, through counsel, objected to the decision to terminate relator's disability retirement on the basis that he had been receiving benefits for the past 17 years and had not, during that time period, been asked to submit to an annual medical examination. Relator requested that he be provided with evidence indicating what physician had continued to certify that his disability was ongoing, thereby causing the board to not require an annual examination.
 {¶ 25} 18. Ultimately, relator was informed that Dr. Robert Atwell, the chair of the medical review board, had certified his disability as ongoing. However, in May 2005, the current chair of the medical review board, Dr. Metz, had requested that relator submit to a medical examination by an independent medical examiner.
 {¶ 26} 19. By letter dated August 16, 2006, relator was informed that the medical review board had authorized an additional exam regarding his appeal of the termination *Page 10 
of his disability benefits. Relator was informed that he should call Steven Katz, M.D., to schedule an appointment.
 {¶ 27} 20. Relator refused to submit to an additional medical examination by Dr. Katz. Thereafter, STRB determined that relator's disability retirement would be terminated.
 {¶ 28} 21. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 29} In this mandamus action, relator argues that STRB abused its discretion when it unreasonably, arbitrarily, and unconscionably decided to terminate his disability retirement benefits. Specifically, relator points out that for 16 years, he was never ordered to submit to an annual medical examination which STRB had the authority to order. Further, relator points out that this annual medical examination was waived by STRS because the board's physician had certified that his disability was ongoing. Further, relator contends that Dr. Lester actually certified that he was not capable of resuming his former position as a teacher and yet, in spite of this, the board decided to terminate his disability retirement benefits. Lastly, relator contends that STRB abused its discretion by referring him for an additional independent medical examination after notifying him that his disability retirement benefits had been terminated. For the reasons that follow, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.
 {¶ 30} The determination by STRB of whether a person is entitled to disability retirement benefits is reviewable in mandamus to correct an abuse of discretion. State ex rel. Pipoly v. State Teachers RetirementSys., 95 Ohio St.3d 327, 2002-Ohio-2219. *Page 11 
The term "abuse of discretion" has been defined to mean an unreasonable, arbitrary or unconscionable decision. Id. Further, in Pipoly, the court refused to extend the requirement of State ex rel. Noll v. Indus.Comm. (1991), 57 Ohio St.3d 203, to orders or decisions of the STRB granting or denying disability retirement benefits. Accordingly, STRB has no clear legal duty cognizable in mandamus to specify the evidence upon which it relied or to explain the reasoning for a decision granting or denying an application for retirement disability.
 {¶ 31} R.C. 3307.62 provides, in relevant part:
 (A) The state teachers retirement system shall provide disability coverage to each member participating in the plan * * * who has at least five years of total service credit.
 * * *
 (B) Application for a disability benefit may be made by a member[.] * * * The application for a disability benefit shall be made on a form approved by the board. * * *
 * * *
 (C) Medical examination of the member shall be conducted by a competent, disinterested physician or physicians selected by the board to determine whether the member is mentally or physically incapacitated for the performance of duty by a disability condition, either permanent or presumed to be permanent for twelve continuous months following the filing of an application. * * *
 * * *
 (E) If the physician or physicians determine that the member qualifies for a disability benefit, the board concurs with the determination, and the member agrees to medical treatment * * *, the member shall receive a disability benefit[.] * * * If such physician or physicians determine that the member does not qualify for a disability benefit, the report of the examiner or examiners shall be evaluated by a board of *Page 12 
medical review composed of three physicians appointed by the retirement board.
 (F) The state teachers retirement board shall render an order determining whether or not the applicant shall be granted a disability benefit. * * *
 (G) The state teachers retirement board shall adopt rules requiring each disability benefit recipient, as a condition of continuing to receive a disability benefit, to agree in writing to obtain any medical treatment recommended by the board's physician and submit medical reports regarding the treatment. * * *
 {¶ 32} R.C. 3307.64 provides:
 The state teachers retirement board shall require any disability benefit recipient to submit to an annual medical examination by a physician selected by the board, except that the board may waive the medical examination if the board's physician certifies that the recipient's disability is ongoing. If a disability benefit recipient refuses to submit to a medical examination, the recipient's disability benefit shall be suspended until the recipient withdraws the refusal. If the refusal continues for one year, all the recipient's rights under and to the disability benefit shall be terminated as of the effective date of the original suspension.
 After the examination, the examiner shall report and certify to the board whether the disability benefit recipient is no longer physically and mentally incapable of resuming the service from which the recipient was found disabled. If the board concurs in a report by the examining physician that the disability benefit recipient is no longer incapable, the payment of a disability benefit shall be terminated[.] * * *
 {¶ 33} Upon review of the above statutes, it is clear that STRB has the authority to compel a disability recipient to submit to an annual medical examination and/or may require the disability recipient to file additional medical evidence concerning their ongoing disability annually. Further, it is equally clear that STRB has the discretion and authority to waive annual examinations where the board's physician certifies that the *Page 13 
recipient's disability is ongoing. Also, nothing in the above statutes limits STRB's authority and/or discretion to require a disability recipient to submit medical evidence of their ongoing disability at any time thereafter. As such, relator's argument that STRB abused its discretion by requiring that he be examined 16 years after he was granted disability retirement is not well-taken as it is clear that STRB has that discretion.
 {¶ 34} Further review of the above statutes also makes clear that STRB is not required to accept and adopt the ultimate conclusion of any examining physician, even an examining physician specifically appointed by STRB to examine a disability recipient. It is STRB that ultimately determines whether a member receives disability benefits and whether a disability recipient continues to receive disability benefits.Pipoly; State ex rel. Peaspanen v. Ohio State Teachers RetirementBd. (2001), 143 Ohio App.3d 164.
 {¶ 35} In Fair v. School Employees Retirement System (1978),53 Ohio St.2d 118, the court held that the determination of whether a member of the School Employees Retirement System ("SERS") is entitled to disability retirement is solely within the province of the SERS retirement board pursuant to R.C. 3309.39. Because the SERS disability statute is virtually identical to the STRB disability statute, the magistrate finds that the court's holding in Fair is relevant here. R.C.3309.39(C) is nearly identical to R.C. 3307.62(C). Upon review of that statute, the court in Fair stated that the retirement board determines not only whether a member is afflicted with a disease or physical impairment, but, also, whether such conditions prevent the person from satisfactorily performing their job duties. In other words, the decision of whether a member of the retirement system is eligible for disability is solely within the province of the retirement board. *Page 14 
 {¶ 36} In the present case, as this magistrate has already stated, STRB had the authority to order relator to submit to a medical evaluation at any time after STRB had originally granted him a disability retirement. Relator submitted to the examination by Dr. Lester who summarized his findings in a January 21, 2006 report as follows:
 Mr. Ackerman was examined on October 28, 2005. At the time of examination, Mr. Ackerman stated that he does not wear glasses. His eyes are dry and irritated. He has tried numerous medications for dryness with limited improvement. His eyelids are somewhat inflamed and he uses lid scrubs and frequent topical antibiotics for chronic blepharitis. He has recently been diagnosed with diabetes mellitus which is well controlled on oral medications.
 The eyes were minimally inflamed thought [sic] somewhat dry at the time of examination. Schirmer test with anesthetic was 15 mm. in both eyes. The corneas and anterior segments were clear and pupils reacted well directly and consensually. Best corrected vision was 20/50 in the right eye and 20/40-in the left eye. The refraction was +1.00-1.00 x 83 in the right eye and +1.25-1.50 x 90 in the left eye. Cup disc ratios were with in [sic] normal limits, introcular pressure was 20 mm and fundus examination with 2.5% neosynephrine was within normal limits. Confrontation field was full.
 {¶ 37} Thereafter, Dr. Lester stated that he did not believe relator was totally and permanently disabled, but that it was not reasonable for the board to expect relator to return to his original teaching duties given his 17 year absence. Dr. Lester then certified that relator was not capable of resuming his regular full-time service similar to that from which he had retired and that his disability benefits should be continued.
 {¶ 38} Contrary to relator's arguments, the physicians of the medical review board were not required to adopt Dr. Lester's ultimate conclusion. The physicians were, however, required to accept his physical findings. Drs. Season, Friedman and Wooley *Page 15 
accepted those findings, yet opined that relator was not disabled from the performance of his previous duties. Their opinion was adopted by STRB and relator was informed that his disability retirement benefits were to be terminated and, in fact, those benefits were terminated. The decision of STRB to terminate those benefits does not constitute an abuse of discretion.
 {¶ 39} In the present case, for whatever reasons, STRB decided, after receiving numerous letters from relator and relator's counsel, to request that relator submit to an additional medical examination by an independent physician. Relator contends that STRB had no discretion to require him to submit to this examination given that STRB had already determined that his disability retirement benefits were being terminated. Given the language of the statute, it is clear that STRB can require a recipient to submit to a medical examination or examinations at any time. As such, STRB had the authority to order relator to be reexamined by Dr. Katz. Relator refused to submit to this examination and, thereafter, relator was informed that STRB was standing by its original decision to terminate his disability retirement benefits. As stated previously, this decision did not constitute an abuse of discretion notwithstanding the fact that relator had been receiving disability retirement benefits for over 16 years. Relator simply does not have a clear legal right to continue to receive disability retirement benefits and relator has not demonstrated that STRB abused its discretion by ordering him to submit to an examination by Dr. Lester, by disagreeing with Dr. Lester's ultimate conclusion regarding disability, by concluding that relator was no longer incapacitated from performing his original duties, by terminating his disability retirement benefits, and further by ordering him to submit to an additional examination by Dr. Katz. Relator's *Page 16 
refusal to submit to that examination, in and of itself, would constitute grounds for STRB to, at a minimum, suspend his benefits until he complies or, if he fails to comply within one year, terminating his disability retirement benefits altogether.
 {¶ 40} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that STRB abused its discretion in any manner and this court should deny relator's request for a writ of mandamus. *Page 1