[Cite as *State ex rel Bryan v. State Teachers Retirement Sys. Bd. of Ohio*, 2016-Ohio-5802.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel.<br>Marcia L. Bryan, | : | |
| | : | |
| Relator-Appellee, | | No. 15AP-1004 |
| | : | (C.P.C. No. 15CV-4292) |
| v. | | |
| | : | (ACCELERATED CALENDAR) |
| State Teachers Retirement System<br>Board of Ohio, | | |
| | : | |
| Respondent-Appellant. | : | |

D E C I S I O N

Rendered on September 13, 2016

**On brief:** *Jones Law Group, LLC, Eric A. Jones, Dustin R. Garris*, and *Tara M. Mondjack*, for appellee. **Argued:** *Tara M. Mondjack*.

**On brief:** *Michael DeWine*, Attorney General, *John J. Danish*, and *Mary Therese J. Bridge*, for appellant. **Argued:** *John J. Danish*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} This is an appeal by respondent-appellant, State Teachers Retirement Board of Ohio ("STRB"), from a judgment of the Franklin County Court of Common Pleas granting the request of relator-appellee, Marcia L. Bryan, for a writ of mandamus ordering STRB to reinstate her disability benefits on a continuing and retroactive basis.

{¶ 2} Appellee, a member of the State Teachers Retirement System ("STRS"), was last employed as a fourth and fifth grade teacher with the Claymont City Schools on September 9, 2002. Appellee filed for disability benefits with STRS on August 26, 2002,

stating she was unable to perform her duties as a teacher due to an immune disorder, severe depression, anxiety, and an obsessive compulsive disorder.

{¶ 3}   On December 13, 2002, STRB granted appellee's application for disability benefits.  From 2002 through 2014, appellee was periodically examined by physicians and psychiatrists, and her benefits were continued throughout that time period.

{¶ 4}   On March 5, 2014, Dr. Joel Steinberg, a psychiatrist, completed an independent psychiatric examination of appellee at the request of STRS to determine if she was still disabled.  In a report dated March 10, 2014, Dr. Steinberg determined that appellee remained disabled because of major depressive disorder, obsessive compulsive disorder, and somatoform disorder.

{¶ 5}   On April 24, 2014, Earl Metz, M.D., chair of the STRS Medical Review Board ("medical review board"), provided additional records to Dr. Steinberg regarding appellee's treatment for immune system disorder, including records from appellee's immunologist, Dr. Robert Hostoffer.  Following his review of those records, Dr. Steinberg submitted a letter to Dr. Metz stating that the new information led him "to the same conclusion that I reached before," i.e., that appellee "is not capable of resuming regular full-time service similar to that from which she retired and that disability benefits should be continued."

{¶ 6}   At the request of STRS, Dr. Ronald Whisler, a rheumatologist, conducted an independent examination of appellee on June 16, 2014.  STRS, through Dr. Metz, subsequently submitted the report of Dr. Whisler to Dr. Steinberg.  On June 27, 2014, Dr. Steinberg sent a letter to Dr. Metz in which he opined that appellee was no longer disabled.

{¶ 7}   Three members of the medical review board reviewed appellee's file, and all three members agreed with the opinion of Dr. Steinberg that appellee was no longer disabled.  On August 14, 2014, STRB took official action to terminate appellee's disability benefits.  Appellee administratively appealed the decision of STRB, and the Disability Review Panel subsequently conducted a hearing on the appeal.  On December 18, 2014, STRB affirmed its prior decision to terminate appellee's benefits as of August 31, 2014.

{¶ 8}   On May 20, 2015, appellee filed a complaint in mandamus with the trial court seeking an order compelling STRB to reinstate her disability benefits.  By decision

and entry filed October 5, 2015, the trial court granted appellee's request for relief in mandamus and ordered STRB to reinstate her disability benefits on a continuing and retroactive basis.

{¶ 9} On appeal, STRB sets forth the following three assignments of error for this court's review:

> 1. The Court of Common Pleas erred in not finding some evidence to support the State Teachers Retirement System Board of Ohio's (STRB's) determination that Bryan was no longer disabled.
>
> 2. The Court of Common Pleas erred in finding that the STRB abused its discretion.
>
> 3. The Court of Common Pleas erred in reweighing the evidence to come to its own conclusion regarding Bryan's condition.

{¶ 10} STRB's assignments of error are interrelated and will be considered together. Under these assignments of error, STRB asserts its decision to terminate appellee's benefits was supported by some evidence, as it relied on the findings of two independent medical examiners (Drs. Steinberg and Whisler) and the recommendation of three members of the medical review board. STRB cites Dr. Steinberg's opinion that appellee's disability benefits should not be continued on a psychiatric basis, as well as the report of Dr. Whisler stating he was unable to identify a medical reason for appellee's alleged disability. STRB further argues that the trial court improperly re-weighed and compared the evidence to find that Dr. Steinberg's opinion was not reliable. STRB maintains that, even though Dr. Steinberg issued more than one opinion, each opinion was based on new medical reports and was internally consistent in light of the then existing medical history.

{¶ 11} At issue on appeal is whether the trial court erred in granting appellee's request for mandamus relief to compel STRB to reinstate her disability benefits. The Supreme Court of Ohio has observed that "[t]he determination by STRS and its retirement board, STRB, of whether a person is entitled to disability retirement benefits is reviewable by mandamus because R.C. 3307.62 does not provide any appeal from the administrative determination." *State ex rel. Pipoly v. State Teachers Retirement Sys.,* 95

Ohio St.3d 327, 2002-Ohio-2219, ¶ 14. Accordingly, "mandamus is an appropriate remedy where no statutory right of appeal is available to correct an abuse of discretion by an administrative body." *Id.*

{¶ 12} In order to be entitled to a writ of mandamus, a relator is required to establish "a clear legal right to the relief sought, a clear legal duty on the part of the respondent to perform the requested act, and the lack of an adequate remedy in the ordinary course of law." *State ex rel. Bertaux v. State Teachers Retirement Sys. Bd.,* 10th Dist. No. 11AP-504, 2012-Ohio-5900, ¶ 6. In general, "a clear legal right exists where an administrative agency abuses its discretion by entering an order not supported by any evidence on the record; however, when the record contains some evidence to support the agency's finding, there has been no abuse of discretion, and mandamus will not lie." *Id.*

{¶ 13} The Ohio General Assembly established STRS "to pay retirement allowances and other benefits of Ohio public school teachers." *Pipoly* at ¶ 13. STRB manages STRS funds, and "[t]he determination of whether a STRS member is entitled to disability retirement is solely within the province of the STRB." *Id.*

{¶ 14} STRS provides disability coverage to each member who meets certain requirements. R.C. 3307.62(A). Pursuant to R.C. 3307.62(B), a member may make an application for a disability benefit, and such application "shall be made on a form approved by the board." Under the statutes governing disability retirement, STRS members "who can demonstrate that they are unable to perform their duties for at least 12 months because of a physical or mental condition are entitled to disability benefits." *State ex rel. Menz v. State Teachers Retirement Bd.*, 144 Ohio St.3d 26, 2015-Ohio-2337, ¶ 3, citing R.C. 3307.62(C).

{¶ 15} After an application for benefits is submitted, "an independent medical examiner will evaluate the applicant and prepare a report for STRB." *Id.* If the independent examiner determines that an applicant is disabled and STRB agrees, "STRB will grant the application. * * * If, on the other hand, the independent examiner finds that the applicant is not disabled, the application and records will be reviewed by three independent physicians on a medical review board designated by STRB." *Id.*, citing Ohio Adm.Code 3307:1-7-02; 3307:1-7-01(F); and R.C. 3307.62(E).

{¶ 16} In the event the medical review board "recommends denial, and STRB votes to deny disability, the applicant may appeal, and a hearing will be conducted upon the applicant's request." *Id.*, citing R.C. 3307.62(F); Ohio Adm.Code 3307:1-7-06(B). An applicant "may appear with an attorney, * * * and STRB will review the application and evidence." *Id.* Further, "STRB may require the medical review board to participate in the evaluation of the evidence and make a recommendation." *Id.,* citing Ohio Adm.Code 3307:1-7-05(B)(5)(e). STRB may then "affirm, reverse, or modify its prior action." *Id.*, citing Ohio Adm.Code 3307:1-7-05(B)(5)(f).

{¶ 17} Under the applicable statutes, "STRB has the authority to compel a disability recipient to submit to an annual medical examination and/or may require the disability recipient to file additional medical evidence concerning their ongoing disability annually." *State ex rel. Ackerman v. State Teachers Retirement Bd.,* 10th Dist. No. 06AP-1133, 2007-Ohio-3280, ¶ 33. STRB also "has the discretion and authority to waive annual examinations where the board's physician certifies that the recipient's disability is ongoing." *Id.*

{¶ 18} This court has noted that the termination of disability benefits "is governed by a different standard than that for an initial determination of disability." *State ex rel. Castle v. State Teachers Retirement Sys.,* 10th Dist. No. 15AP-845, 2016-Ohio-1245, ¶ 51. Specifically, in order to terminate benefits "there must be an examination and certification that the recipient is no longer disabled." *Id.* Further, "[t]he determination of whether a member is entitled to the continued receipt of disability retirement benefits is within the exclusive authority of the retirement board, but the determination must be based on a medical examination and pertinent medical evidence." *Id.* at ¶ 52. Under the termination statute, "there must be new evidence in the record that a recipient is no longer physically and mentally disabled in order to terminate a disability benefit," and therefore "[t]erminating a recipient's benefits in the absence of such evidence would constitute an abuse of discretion." *Id.* at ¶ 53.

{¶ 19} In her 2002 application for disability benefits, appellee cited the following physical and mental conditions as the basis for her disability:

> Physically, I am suffering from an immune disorder "common variable hypogammaglobulinemia" which has caused an increase in frequency and severity of respiratory infections.

> Exposure to children obviously puts me at risk. I have just begun a type of treatment to try to build up my immune system. Mentally I am suffering from severe depression, anxiety, and obsessive-compulsive disorder.

{¶ 20} As noted under the facts, after STRB granted appellee's 2002 application for disability benefits, various physicians and psychiatrists examined appellee over the subsequent years. At the request of STRS, Dr. Steinberg performed an independent psychiatric evaluation of appellee on March 5, 2014.

{¶ 21} Dr. Steinberg prepared a report, dated March 10, 2014, in which he noted that the patient reported she is "believed to have hypogammaglobulinemia," and that she "had been receiving infusions of gamma globulin on a monthly basis" to treat this condition. Dr. Steinberg noted that Dr. Hostoffer was treating appellee for hypogammaglobulinemia. During the examination, appellee reported a history of fibromyalgia, and she discussed her obsessive compulsive disorder symptoms. Dr. Steinberg reviewed appellee's medical/psychological records dating back to 2002, and noted references in those records to vocal problems which were evident during the examination. Dr. Steinberg identified three DSM-IV diagnostic possibilities: "Major Depressive Disorder"; "Obsessive-Compulsive Disorder"; and "Somatization Disorder."

{¶ 22} In his report, Dr. Steinberg noted that the "entire interview took place at a whisper volume." Dr. Steinberg further stated in part: "I did not have the opportunity to see any of her gamma globulin levels, but it would not surprise me if those levels bordered on the normal range and that the entire presentation is that of somatoform disorder." In the "Discussion" section of the report, Dr. Steinberg stated as follows:

> Ms. Bryan has been carried by STRS as a disabled person for more than a decade now. She has times when she is somewhat better and times when she is somewhat worse. What she reported to me about her voice would be disabling for her job as a fourth grade teacher (not able to speak above a whisper level over half of the time). As I indicated abo[ve], while the entire picture might be nothing more or less than a somatoform disorder (I did not have the information about her reported problems with hypogammaglobulinemia), I believe that regardless of whether that condition is present or not, that she remains disabled for her teaching job due to her Major Depressive Disorder, Obsessive-Compulsive Disorder and her Somatoform Disorder.

{¶ 23} Dr. Metz, acting on behalf the medical review board, subsequently provided Dr. Steinberg a letter from Dr. Hostoffer, dated May 1, 2009, containing information with respect to appellee's diagnosis for common variable immunodeficiency, including an appended laboratory report.  In that 2009 letter, Dr. Hostoffer stated in part:

> Ms. Bryan * * * has been diagnosed by Dr. Berger with Common Variable Immunodeficiency six years ago and has subsequently been placed on IVIgG during that period.
>
> Four years prior to the start of her infusions she suffered with infections every month requiring antibiotics.  These infections worsened progressively to the point of hospitalizations.  She was admitted ten times for pneumonia and required PICC line therapy for one event.
>
> Since starting infusions she has had no infections.  She has maintained relative health.  I feel the infusions have be[en] helpful and should be maintained in order to prevent morbidity and mortality.

{¶ 24} By correspondence dated May 1, 2014, Dr. Steinberg reported to Dr. Metz and the medical review board that he had reviewed the letter from Dr. Hostoffer, dated May 1, 2009, in which Dr. Hostoffer "indicated that he had diagnosed Ms. Bryan with Common Variable Immunodeficiency and had placed her on intermittent intravenous IgG."  Dr. Steinberg further stated in part:

> The information that you provided also showed some borderline low IgG measurements.  The information newly made available to me confirms that Ms. Bryan actually has an underlying medical basis for her concerns.  That is to say there is a basis for her health concerns that I identified as a somatoform disorder.  If anything, the newer information more strongly supports the opinion that her disability is ongoing.  Her disability is based both upon physical and mental disorders.
>
> The information newly made available to me needs [sic] me to the same conclusion that I reached before.
>
> I again hereby certify that because of the disability as reported, the above-named disability beneficiary is not capable of resuming regular full-time service similar to that

from which she retired and that disability benefits should be continued.

{¶ 25} On June 16, 2014, Dr. Whisler, a rheumatologist, performed an independent medical examination of appellee. In a report received by STRS on June 28, 2014, Dr. Whisler stated in part:

> This member is seen for a re-examination as to her permanent disability that became effective 2002. She states she has hypogamma globulinemia, voice disorder with fade etiology unknown and fibromyalgia with depression.
>
> She indicates she began having what was considered to be laryngitis with decreased voice often times not much louder than a whisper beginning in 2000 and was seen by otolaryngology diagnosed as possibly acid reflux or psychogenic. She has been treated but the symptoms continue.
>
> Her hypogammaglobulinemia was diagnosed in 2002 after recurrent sinus infections * * *. She was diagnosed as having common variable immunodeficiency and was placed on IVIG about 2002. With the monthly IVIG, she has done well with no further hospitalizations for infections.

{¶ 26} Under the heading "Assessment/Plan," Dr. Whisler stated the following:

> Her hypogammaglobulinemia is under excellent control with the IVIG treatments which she expects to be able to continue. She does have the fibromyalgic symptoms but uses analgesics with reasonable control and no limitations.
>
> From the history she provides, the whispering voice/voice impairment has baffled several specialists in ENT who initially attributed the problem to acid reflux. She states the problem is considered multifactorial but it is unclear today if this is related to her depression etc.
>
> I do not consider the hypogammaglobulinemia that is well controlled or the fibromyalgic symptoms to be reasons for permanent disability at this time. I cannot identify a medical reason for her permanent disability.

{¶ 27} STRS forwarded the report of Dr. Whisler to Dr. Steinberg. By report dated June 27, 2014, Dr. Steinberg stated in part the following:

As you know, at your request I performed a comprehensive psychiatric evaluation on Marcia L. Bryan in my office on March 5, 2014. In May 2014 you provided me with some additional information and I submitted an addendum. You have now provided me with an IME report based on an evaluation of 6/16/2014 done by Ronald L. Whisler, M.D.

You will recall that in the addendum report I felt that the information provided by Dr. Hostoffer supported a physical basis for her disorder. I wrote, "That is to say there is a basis for her health concerns that I identified as a somatoform disorder. If anything, the newer information more strongly supports the opinion that her disability is ongoing. Her disability is based both upon physical and mental disorders."

Dr. Whisler pointed out that her hypogammaglobulinemia is now well-controlled with supplemental monthly injections of gamma globulin. He clearly did not believe that she was disabled based on the history of fibromyalgia. He concluded that the difficulties she had with vocalization were medically unexplained. I accept what Dr. Whisler has stated. The hypogammaglobulinemia is no longer an issue.

I felt that Ms. Bryan's inability to make use of her voice in the classroom was disabling, but I recognize that vocalization is an area outside of my own area of expertise.

Originally, I thought that there were three different psychiatric issues, major depressive disorder, obsessive-compulsive disorder and a somatoform disorder. I no longer find a somatoform disorder to be present. I believe those symptoms are fully accounted for by the symptoms that she has had due to her hypogammaglobulinemia. I do not think that the then current level of depressive symptomatology and the then current level of obsessive symptomatology (at the time of the March 2014 evaluation) are/were disabling either singly or in combination. It was particularly the multiple somatic symptoms taken along with her impairment inability to raise her voice that I saw as the disabling features. (I also thought that the lengthy period of time that she had been away from teaching had to be taken into consideration, but that is not a psychiatric issue.)

Based on the newer information, I have revised my opinion. It follows here. I hereby certify that because of the psychiatric disability as reported, the above-named disability beneficiary is capable of resuming regular full-time service similar to that

from which she retired and that disability benefits should not be continued on a psychiatric basis.

{¶ 28} In her mandamus action, appellee argued before the trial court that STRB abused its discretion in accepting the report of Dr. Steinberg as some evidence to support STRB's determination to discontinue her disability benefits. Specifically, appellee maintained that the final report of Dr. Steinberg was unreliable because he confused the immune condition with the voice condition and failed to acknowledge the nature of somatoform disorder and its symptoms in relationship to his own psychological diagnosis and clinical evaluation. Appellee further argued that Dr. Steinberg should not have relied on the opinion of Dr. Whisler, a rheumatologist, in addressing and/or understanding psychological symptoms.

{¶ 29} In its decision granting appellee's request for mandamus, the trial court held in part:

> Dr. Steinberg's final opinion is confusing, contradictory to his earlier reports, and ambiguous. Dr. Steinberg in his final report does not deny her voice impairment issue. He did seem to give an opinion that she does not continue to suffer from Somatoform Disorder. Dr. Steinberg did not opine that she could teach and did not opine as to the cause of her voice impairment. The only basis for the change of his opinion was Dr. Whisler's report.
>
> Dr. Whisler is not a psychiatrist, not a specialist in immunology, or in ENT issues. * * * Nothing in Dr. Whisler's report deals with [appellee's] Somatoform Disorder or her voice impairment. Thus, no evidence exists in the record that supports Dr. Steinberg's change of opinion regarding these two conditions. Dr. Whisler merely indicated that any of [appellee's] immune conditions were well controlled. His opinion did not relate to, or in any way, indicate [appellee] did not have a voice impairment or suffer from Somatoform Disorder, which even if a psychological condition, it can be disabling. Dr. Steinberg's final contradictory report repudiating his earlier opinion was unsupported by information in Dr. Whisler's report. Further, Dr. Steinberg's [report] failed to clarify or explain the change of his opinion. Therefore, this opinion is not reliable probative competent evidence.

{¶ 30} On review, we agree with the trial court that the final report of Dr. Steinberg, in which the psychiatrist revised his opinion to find the absence of somatoform disorder, is confusing and contradictory with his earlier reports. As indicated by the trial court, the report of Dr. Whisler, a rheumatologist, served as the basis for Dr. Steinberg's change of opinion. In his report, Dr. Whisler noted that appellee had been diagnosed with immunodeficiency in 2002, that she had done well after receiving monthly IVIG treatments, and that the hypogammaglobulinemia was under "excellent control with the IVIG treatments." With respect to the issue of vocal impairment, Dr. Whisler stated that appellee's "whispering voice/voice impairment has baffled several specialists in ENT who initially attributed the problem to acid reflux," and he noted that the patient "states the problem is considered multifactorial but it is unclear today if this is related to her depression etc."

{¶ 31} As quoted above, Dr. Steinberg stated in his first report that he "did not have the opportunity to see any of [appellee's] gamma globulin levels, but [that] it would not surprise me if those levels bordered on the normal range." Finding that "[w]hat she reported to me about her voice would be disabling for her job as a fourth grade teacher," Dr. Steinberg opined that "the entire picture might be nothing more or less than a somatoform disorder."[1] Dr. Steinberg further stated that, regardless of whether the immune condition "is present or not," appellee "remains disabled for her teaching job due to her Major Depressive Disorder, Obsessive-Compulsive Disorder and her Somatoform Disorder." Following his review of Dr. Whisler's report, Dr. Steinberg stated in his final report: "I no longer find a somatoform disorder to be present. I believe those symptoms are fully accounted for by the symptoms that she has had due to her hypogammaglobulinemia."

{¶ 32} Under Ohio law, "equivocal medical opinions are not evidence." *State ex rel. Eberhardt v. Flxible Corp.,* 70 Ohio St.3d 649, 657 (1994). In this respect,

---

[1] A somatoform disorder has been defined as "a psychological disorder marked by physical symptoms for which there are no demonstrable organic findings or known physiological mechanisms." *Shuet-Cheng Lam v. Barnhart,* D.C.N.D. Calif. No. C 03-2886 PJH (Dec. 3, 2004). The "[p]hysical symptoms can include persistent problems with one's vision, speech, hearing, use of limbs, bodily movement and control, and senses." *Id.* Further, "[p]sychologists generally consider persons with somatoform disorders to be perceiving real pain," and "[a] somatoform disorder is thus different from malingering." *Id.*

"equivocation occurs when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement." *Id.*

{¶ 33} As noted, Dr. Steinberg initially determined that "regardless" of whether or not a physical medical condition (immune disorder) was present, appellee remained disabled due to the three mental health conditions (major depressive disorder, obsessive compulsive disorder and somatoform disorder); in that report, Dr. Steinberg discussed appellee's vocal impairment, and stated he would not be surprised if the entire presentation "is that of somatoform disorder." In his final report, however, Dr. Steinberg opined he no longer found a somatoform disorder as he believed "those symptoms" were "fully accounted for" by the symptoms associated with her immune disorder. Here, we agree with the trial court that the final opinion of Dr. Steinberg, which fails to address the issue of whether the symptoms associated with appellee's vocal impairment are consistent with somatoform disorder and/or related to the depressive disorder, is confusing and contradictory to his earlier reports.

{¶ 34} With respect to the issue of vocal impairment, Dr. Steinberg noted in his first report that appellee's speech was at a whisper and, as previously noted, the psychiatrist stated that the entire presentation might be that of a somatoform disorder. Dr. Whisler, in his subsequent report, discussed appellee's vocal condition and noted "it is unclear today if this is related to her depression." In his final report, Dr. Steinberg cited Dr. Whisler's conclusion "that the difficulties she had with vocalization were medically unexplained," and Dr. Steinberg "accept[ed] what Dr. Whisler has stated." As found by the trial court, however, nothing in the report of Dr. Whisler, who is not a mental health professional, indicates that appellee did not suffer from a vocal impairment or somatoform disorder, nor did the final report of Dr. Steinberg, a psychiatrist, address whether the symptoms associated with the vocal impairment were consistent with, or attributed to, that disorder. In light of the foregoing, we conclude that the final opinion rendered by the psychiatrist on the issue of disability was equivocal.

{¶ 35} Based on the record presented, we find no error with the trial court's determination that the final opinion of Dr. Steinberg did not constitute some evidence upon which STRB could rely, nor do we find that the trial court improperly re-weighed the evidence in finding that report to be confusing and contradictory. Accordingly, the trial

court did not err in holding that STRB abused its discretion in relying on the report at issue as the basis to deny disability benefits.

{¶ 36} Finally, as stated by this court in *Castle,* we find it appropriate to note that nothing in this decision should be construed as "interfering with the exclusive authority of STRB to make future determinations" as to whether appellee "is entitled to the continued receipt of disability retirement benefits." *Id.* at ¶ 64. In this respect, we note (as also stated in *Castle*) that the applicable statute "permits multiple examinations to determine continued entitlement to disability retirement benefits." *Id.*

{¶ 37} Based on the foregoing, STRB's three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

DORRIAN, P.J., and LUPER SCHUSTER, J., concur.

_____